Case number 25-3265 Norton Outdoor Advertising Inc versus Village of St Bernard OH at all. Argument is not to exceed 15 minutes per side. Mr. Galasso, you may proceed for the appellant. May it please the court, Michael Galasso on behalf of Norton Outdoor Advertising Appellant. I'm going to divide the 10 minutes that I have for argument between the two issues of severance and the level of constitutional scrutiny. As to severance, we believe that the district court must be reversed for four different reasons. One, because the Village of St Bernard waived the right to argue severance in response to our summary judgment motion. Two, based on the second prong of the Geiger test under Ohio state law for severance. Three, based on the third Geiger prong for severance. And four, based on Ohio law, which does not allow for the severance of an ordinance, we're doing so would subject people previously exempt to coverage from the law. When looking at the issue of severance, the court is not to look solely to the stricken provision or to the preamble, but must look at the ordinance as a whole. And looking at chapter 711 of St Bernard's code as a whole, you can see that they implemented a system where signs built prior to the year 2000 would be nonconforming. Now, signs that were built after that would not be nonconforming. And signs that were built prior to 2000 could lose their nonconforming status if they were moved or otherwise altered in a way that they would lose it. They also regulated the location and the spacing of signs, the distance between them. They required signs at certain locations to have additional permits from the Ohio Department of Transportation. But most importantly, they provided for a cap and replace program where the number of signs was capped by their size and by their number as existed in the year 2000. This shows an intent to regulate them wholly and that they did not intend to regulate the previously exempt signs which would now fall under the ordinance. In the evidence in the record, there's evidence of both a school and a church that would have variable message signs that would not fall under the exemption. We believe that there will be a number of banks, pharmacies, schools, or churches that would no longer be exempt from the rule and will be required to get permits or to otherwise take their signs down. In response, St Bernard admits that document 76, page 2331 of the record, that what it calls a small segment of signs would fall under the regulation now. And I would posit that that's a distinction without a difference because whether that number is one or a hundred, it still expands the scope of the law impermissibly. The district court found that the effects of the severance were speculation, but it's our position that that speculation is actually employing the severance analysis to find out whether these provisions can be removed. To avoid addressing this, the district court said that number one, St Bernard could elect not to enforce its law against the previously accepted signs or two, that it could wholesale grant variances to all of them. There's no evidence in the record. Why aren't these questions that might be addressed in the future but not relevant to our which is whether a particular subsection of the law can be severed because we found it previously to be unconstitutional? Yes, your honor. And so to address that, what I would say is that that goes to what the village argued, that it's a small section that's being severed, but you have to look at the entire ordinance. So it's like a Jenga tower. If that small section's at the top of the tower, perhaps removing the stricken piece doesn't do anything to the overall ordinance. But if that single piece is at the bottom of the Jenga tower, and you pull that out, then the entire ordinance would have to fail. So you can't just look at it in isolation because it impermissibly expands. It shows an intent that at least one and numerous, or what the village calls a small segment of speakers, are now going to be subject to the ordinance. But it isn't a correct counsel that at this stage, we really don't know how that will be faced. That is, what you've got in effect is the village's ordinance being rewritten in a certain sense as a result of a court ruling, if we rule that way. And then it would be up to village as to how to treat it. And presumably that could be litigated. If this was considered to be some kind of taking or a misinterpretation, you could litigate that in the future when we know in fact what they're going to do, which we don't know at this point. That is true, Judge Boggs. And that would be true under any severance analysis. Anytime you strike the law, and now people that were previously exempt are subject to that, you're not really going to know the full effects of that, which is why the district court said we could wholesale grant variances, we could elect not to enforce it, we could change the law, but that's really not part of the Geiger test. The Geiger test is based on intent, and it cannot be that St. Bernard both intended to limit the number of sign faces in 2000 and to later bring those people back within the regulation, and Ohio law simply does not provide for that. Well, doesn't Ohio law have a presumption in favor of severance, and aren't the three Geiger factors pointing, as the district judge and the magistrate judge both said, towards saying that severance of this one very small provision is the appropriate remedy? Your Honor, yes, there is a presumption, and it's just that. It's a presumption, but the presumption doesn't, you know, the intent doesn't come from having a severance provision. The intent is the intent of the overall structure, and that's what we're arguing, that they didn't intend to regulate under this comprehensive regulation all of the previously accepted persons. Turning to the constitutional scrutiny, what we have argued here is that there has to be more than just stating the governmental interest that's to be advanced under even intermediate scrutiny, and that there's been no evidence offered in response to Norton Outdoors' motion for summary judgment other than the text of the code itself, and that's what the village argues in its brief, that it's entitled to proceed on only. There's no evidence of narrow tailoring. There's no evidence of a close fit between the means and the ends, and there's got to be more done on summary judgment to carry your burden on intermediate scrutiny, and so I would to the court that this is even less than rational basis scrutiny because at least under rational basis, you would have to have some basis for your law, so I'd like to pose a couple of scenarios to the court. If the sign code said that for traffic safety purposes, which is a governmental interest, that it prohibits signs that are built on Fridays or built with union labor or built by U.S. citizens, all of those things would be subject to a rational basis review. However, if you take their stated governmental exception to intermediate scrutiny, we could never challenge any of those types of prohibitions because the analysis stops at stating the interest, and that's not what happened in the Austin case. The Austin case was actually tried at the district court in Texas and then went to the Fifth Circuit, and then when it came back from the Supreme Court, it was reviewed to determine whether there was evidence that carried the government's burden, which it holds at all points of the intermediate scrutiny test. So what is your view as to the fatal flaw under intermediate scrutiny of the statute with the provision severed? Well, Your Honor, it's not just with respect to the provision severed. The statute, I thought you were saying that the whole statute, once we severed the provision, that the whole statute failed intermediate scrutiny, and I'm asking what the problem specifically is under intermediate scrutiny in your view. In my view, Your Honor, the government would need to carry its burden of proof. So there's a Kentucky Supreme Court case called Flying J. In Flying J, the Supreme Court commented that it's impossible to determine how a sign that displays the price of gasoline is more dangerous or more aesthetically pleasing or displeasing than one that displays the time or temperature. And so I would say the same thing here. We're entitled to intermediate scrutiny review as to whether an on-premise sign can be accepted from the same regulations as ours. Even if you remove the public information exception, we're still entitled to that intermediate scrutiny review. And that has never been done here. We've put forth the evidence and the only evidence in the record that the village ever put forth, and they didn't respond to discovery responses, which are in the record, and we do have a deposition, but there's no evidence of anything other than it's an Ipsy Dixit argument where they just say that traffic safety is traffic safety, and so they can't be questioned on it. And so we believe they did not meet their burden and that the court has to hold them to that. With that, I see my time is up, Your Honor. Thank you. So I think unless any judge has another question, I think we're set to hear the appellee. May it please the court, Ray Fredegar for the Village of St. Bernard Appellees. Thank you. The district court did exactly what this court instructed it to do. And we asked this court to affirm the decision of the district court in its entirety. Counsel didn't spend any time on waiver, so I won't address that in opening argument, but I will address a lot of his points on severance. First of all, he ignores very important language in the Geiger test, especially the word impossible in the second prong. For the first prong, it's very clear. Counsel didn't spend any time on it. The first prong of the Geiger test is clearly met here. By the way, we do have an Ohio legislature, 1.50, that says severance is favored. We also have chapter seven in the charter itself that says severance is the favored method. Looking at the Geiger test, as I mentioned, we'll jump to the second prong. And the second prong says that after severance, is the general intent of the legislature comport with the remaining language in the ordinance? In other words, would it be impossible for the general intent of the legislature to be followed? So in other words, if there's any possibility for this ordinance to be followed after severance, it satisfies the second prong of the statute. I want to point out the language that this court used in its first decision at page 36, let's see, 13 of its decision, actually. And it was talking about the definition of advertising sign and how that language didn't line up with the public service sign exemption. And that's, the court had struggled with that because of the different definitions under those two sections. But the court had no problem with how the remaining ordinance exemptions lined up with 711. If you get rid of the public service exemption, there's no longer this disconnect. They do perfectly line up the language and the definition of outdoor advertising sign and the rest of the remainder of the exceptions. What is your response to this argument that your opponent is making about caps, cap and replace? Yes, it's interesting, your honor, because, and you, your honors did bring up some good points as we simply don't know what exactly is going to happen from here on out. But on the other hand, I think the magistrate judge, in his opinion, addressed this very nicely when he said that general scope of chapter 711 and the definition of outdoor advertising sign remain consistent with that intent. Norton attempts to redirect this court about the questions that the village might face. However, Norton's argument is both overly speculative and inconsistent. Now, I suppose that there are public service signs. There will be some that will be non-conforming. There will be other signs that still can be changed. We simply just don't know. But what Geiger requires is that the court look at the entire statute and the intent of the entire at the intent of the legislature, is it 711.01? And we think this case is very close to metromedia. Now, there have been many, many cases over the years about billboards. So it's not like the Pagan case where we have a police chief given his own interpretation of the intent of an ordinance. In metromedia, the Supreme Court rejected the argument that a scant record was inadequate to show the billboard ordinance directly advanced governmental interests. A metromedia court described as the accumulated common sense judgments of local lawmakers and of the many reviewing courts that billboards are real and substantial hazards to traffic safety, which the court and metromedia declined to question. I'm not questioning that. I'm looking back to the question about the cap and replace. Let's assume that there's 20 or 50 of these time and weather similar type signs. As I understand the ordinance and what happened in 2000, if we rule in your favor, there will then be too many signs. They'll exceed the cap and replace limit. Now, the village could simply raise the limit and start with that. But if the village were to say, well, we're over the limit and we're going to have to get rid of 20 or 50 signs, wouldn't that potentially raise a host of legal issues that would be caused by ruling in your favor? I suppose down the line, we would have to determine how the village handled the situation. But on the other hand, presently, that in and of itself should not make the sign ordinance unconstitutional in its entirety. At least right now, you're not enforcing any changes against any particular person with a sign. That's my understanding. Now, you're not stating in intent to, but of course, we can't determine what a future village board might do. Right, exactly. It's just too speculative, too much conjecture to actually rule an entire statute, especially when you have the Ohio legislature and the village of St. Bernard preference that there be severance and that the effort should be made to sever and apply the statute and see how it plays out. Council also talked about applying the test, intermediate level scrutiny. We think the district court was absolutely correct that intermediate scrutiny was satisfied. Here, we have a definite governmental interest that is substantial. It's set forth in the statute and has been set forth in many, many ordinances across the country. The governmental interest, the regulations, by the way, are advancing those governmental interests and the regulation must be no more extensive than necessary to serve that substantial governmental interest. Further, it leaves Norton ample alternative channels for communication. In fact, to this day, Norton is still operating billboard signs at this location, but just deactivating the variable message component of the sign. So Norton, as of today, still has ample mean alternative methods of communication. Your position then is that there has been sufficient evidence produced to meet the intermediate scrutiny standards where you have the burden to show that your provision withstands intermediate scrutiny. Absolutely. Yes, absolutely. Especially with the long history and so many studies being done, it's not like each municipality has to go out and do its own independent study before it can come up with any kind of ordinance regulating expressway advertising. The third Geiger prong was satisfied and that is there are no words have to be added or subtracted to sever the unconstitutional public service exemption. Now, in their brief, Norton argues that, well, you'd have to include words if you wanted to bring those public service signs back so that they enjoy the exemption, but that's not what the test of Geiger says. The Geiger test says, do words have to be added or subtracted to sever, to actually sever. Here, the only thing that needs to happen is you remove a semicolon and add a period. And that's it. That's all that has to be done. So, we think, as your honor said, the three-prong Geiger test does favor the district court's decision allowing severance in this matter. And under the Ohio Supreme Court's decisions, Geiger is still the good law in Ohio, correct? Yes. Yes. We also believe the district court was correct that Norton was not a prevailing party in this matter. Norton did not satisfy the requirements for getting declaratory judgment. Norton initially challenged the entire ordinance, including chapter 1185. Eventually, ended up waiving that argument. Court held that it did not have standing and it did not object to that. But the interesting thing about it, too, is Norton and this court commented on the dystopic way that Norton made their allegations against the village. They attacked everything about the ordinance. So, when we reserved our right to argue severance, there's no way we could have pinpointed to each particular provision that could be severed and with the remainder of the ordinance to satisfy. It was impossible to do that. We had to be very general in our reservation of severance. So, having argued that Norton is not a prevailing party and it did not suffer a constitutional injury, we believe that Norton is not entitled to any compensatory damages, declaratory judgment, or attorney fees. I'm happy to take any questions that you may have. Do either of the other judges have questions? Not I. Thank you. Thank you. Rebuttal time. Mr. Golasso. Thank you, Your Honor. Mr. Frutiger indicated that the district court, when they reviewed the severance issue, that they were instructed to do so by this court's last decision. And, essentially, what happened is this court said that the district court hadn't reviewed the severance argument and that it believed that the district court was best positioned to do that in the first instance and remanded it for that issue. So, this court did not opine in any way as to whether severance was proper. And the presumption of severance is just that. It's a presumption. It doesn't override Ohio law, substantive Ohio law, that provides that you can't sever an ordinance where doing so is going to expand the scope of subject to the law that were not previously subject to it. And that's outside of the Geiger test. That's in applying the Geiger test. Wouldn't your position then mean that any time an exemption is found to be unconstitutional and, therefore, more people will be covered by a billboard sign that, therefore, severance is not proper? Is that the essence of your position? Yes, Your Honor. If the severance of the provision brings more people within the regulation of the ordinance, that that is inconsistent with Ohio law and that the judiciary can't take that role and that only the legislature could take that. Okay. Specifically, what do you cite for that provision that you assert is part of Ohio law? So, Your Honor, that would be the progeny of cases that were cited in the Tip City case. Okay. But Tip City is, first of all, it's a court of appeals of Ohio, not the Supreme Court of Ohio. And secondly, Tip City, as I recall, is relying heavily on this opinion by the state Justice Taft, Kingsley Taft, in the English case, which was not a majority opinion. Am I wrong on any of those points? You are correct, Your Honor, on those points. It is a court of appeals decision, but it does cite to Wilmot v. Buckley in 1899 and Board of Health v. Greenville in 1912. And how did it deal with Geiger? Did it explicitly address Geiger? Some of those cases predate the Geiger. No, but did Tip City, which is recent, did it address Geiger? Yes, Your Honor. And so what we're angling for here is to show the difference between engaging in the Geiger test, but having another limit on the Geiger test where if you take out an exception and the exception expands the scope of the law to people not previously subject to it, that that would be inconsistent. And yes, that is best summarized by the Tip City case, which is a second district case. I recognize that. But those decisions do flow from the Supreme Court and go back a long period of time. But my question was, how do those decisions interrelate with Geiger, which is an Ohio Supreme Court decision that seems to be viewed as the binding decision that governs us? So, Your Honor, it would be in addition to. So it's not in place of or overridden by. It is an additional principle that when you're applying the Geiger test, that the court is additionally constrained by those line of cases that flow into the Tip City case. So it's just a doctrine that flows on top of the Geiger doctrine, the Geiger test. Mr. Frueger also said that it would be best to just sever this and then see what happens. But if that's the case, I don't know how a party could ever challenge severance because you'd have to say, well, let's just see what happens. The village itself admits what it calls a small segment of people previously not subject to the law will now be subject to the law. And to me, regardless of how the court balances the Geiger test, we're not challenging the first of the two provisions. Then then you can't uphold severance in that issue. There, Mr. Frueger also indicated that he believes that Metro Media supports his decision or his position. Metro Media is a billboard case, but there's been City of Ladue versus Galeo in 1994. There was the Austin decision there. You know, while not technically a billboard, the Reid decision is a signed case. The reason that we cited Pagan versus Sprooky, I acknowledge that it was a for sale sign on a car and not necessarily a billboard. But the reason that we cite it is because it's the Sixth Circuit stating what the government's burden is on intermediate scrutiny. And that's why we believe that's relevant. So, Your Honor, I see my time is up. And for those reasons, we believe the court should be the district court should be reversed. Thank you both for your argument. The case will be submitted and we will issue a decision in due course.